NO. 8536

COURT OF APPEAL

PARISH OF ORLEANS.

-----

DANIEL CARTER

versus

NEW ORLEANS RAILWAY & LIGHT CO. and

NATIONAL SURETY COMPANY.

-------

Court of Appeal
PARISH OF ORLEANS
FILED APR 10/22
N. J. Stansbury

Dinkelspiel; J.

Plaintiff institutes this suit against the defendants, alleging that he was a passenger on a Louisiana Avenue car, and having paid his fare to his destination, he was entitled to be carefully carried and set down at the place where he intended to alight; he alleges further that when said car reached Canal and St. Charles Streets and came to a stop he came on the rear platform of said car and was about to step down when the car started off, throwing his hip against the steps of the car, from which he sustained a comminuted fracture of the hip bone, and the defendant company violated its contract of ~~said~~ transportation.

The answer of the Railway Company admitted that plaintiff was a passenger, as alleged by him in his petition; but avers that whatever injuries the/~~xxixprxxxx~~ plaintiff may have received, be brought same upon himself by his carelessness, negligence and imprudent conduct in alighting from the moving car under circumstate: then existing and if injured he is without right to recover for the injuries by him sustained, because of his own fault and therefore prays for a judgment in its favor.

The National Surety Company, made one of the defendants in this case, denies all the allegations of plaintiff's petition; admits that it was a surety for the sum of $5000.00, but affirms and adopts for its further answer, the facts as alleged by the Railway Company, in its proper defense and asks for judgment.

There was a trial in this case by jury, nine of whom found a verdict in favor of plaintiff, in the sum of Five Thousand Dollars; hence this appeal.

A careful examination of all the testimony in this case satisfies us that plaintiff was a passenger on a Louisiana Avenue car on the date mentioned in his petition, October 26th, 1920, when the car reached, as he thought, St. Charles and Canal Streets, at which place he wanted to alight.

237

He testifies that the car stopped there and as he came out of the car and before he got a chance to reach the ground sufficiently, the car started off and he lost his balance and fell; he further testifies that when he came out of the d or th t the conductor was on the inside writing in a book, and as plaintiff was about to step on the steps, the car took a sudden lurch and threw him on his hip and crushed it, and he further testifies that the car had stopped, and he came out of the car, passing right by the conductor, and he was about to step down on the steps when the conductor ɪɪɪ rang the bell and that the starting of the car threw him out and he fell on his hip and hit his hip on the steps, not giving him a chance to reach the ground before the bell rang; he described his injuries, his sufferings, the attentions paid to him by his physicians, the time that he lost from his work, the amount of wages he was earning per week, and at the time of the trial of this case he was still suffering and unable to work.

The testimony of Chris Bates, after describing the crowd of people, that he saw, he saw a man on the floor, just as the car was fixing to cross and the car had stopped and he saw the car again pull off and that somebody fell and he would have gone to plaintiff's rescue if he had recognized him, he fell from the back platform and after the car had pulled off and stopped again; this was right across the crossing at St. Charles Street and just as the car pulled across the track it stopped, he testifies further that at the time he did not know that plaintiff was injured or that he knew who he was; subsequently met his wife whom he had known for a long time xxdxkxx and when she informed him that she was going to the hospital and he inquired why, she said that her husband got hurt by a fall from a car at St. Charles and Canal Street, and after some other conversation, he informed the woman that he was

238

standing at the car the time the accident happened, but he did
not know that his friend Carter had been hurt and that he knew
otherwise, all about the affair.

In behalf of the defendant, the conductor, of the car,
who had been in the service for thirteen years and who was con-
ductor at the time this accident occurred, which was on the 26th
of October, 1920, was asked the question:

Q. Now just describe how the accident happened?

A. Well it hadbeen drizzling rain, and it was awful
sloppy, when the car neared St. Charles Street, we were going
very slow and the man stepped off the car, and when he did,
he looked like he made a step and fell on the ground on one
leg, and then of course we went to the corner, about thirty
feet, and stopped, and he did not get up and I went back and
picked him up, and he said: "I must have broke my leg" and
then the motorman came out and helped me carry him on the
car, and we took him on the back of the car and subsequent-
ly the ambulance came and carried him, doubtless to the hos-
pital.

Q. Had you given the signal for the car to stop at
that corner or is it customary for it to stop without a signal?

A. It is customary to stop without signals on the near
side of the crossing.

Q. When did you give the signal for the car to go ahead?

A. After we got him on.

Q. Did you give any signal for the car to go ahead as
he was getting off?

A. No sir.

Q. And was the car moving or stopped when he got off?

A. The car was moving.

Edward Suhring, a witness for the defendant, fifty two
years of age, head foreman for the Algiers Saw Mill.

Q. On October 26th, 1920, somewhere around six o'clock
in the morning, an accident occurred at Canal and St. Charles

Streets, when a colored man getting off a Louisiana Avenue car fell and got injured; were you there?

A. I was standing at the corner waiting for that car.

Q. Did you see the accident happen?

A. I saw him fall, yes sir. I was standing by the post just where the car makes the usual stop, and this man got off the car about twenty feet before the car came to a stop I would judge, what I mean four lines of pavement and that measures about five feet, the car was rolling when he jumped off the car, and he fell **and** his leg went under him, and the conductor helped him on the car and went to Canal and the river and I went on. Witness goes on to testify that he was on the same car that the man was taken out of.

Q. Do you know how long the car was detained there until the conductor gave the bell to go ahead again?

A. I do not remember, I do not think it would be longer than seven or eight minutes.

Louis Mason, forty three years of age, working for the Corona Coal Company for twenty years.

Q. In 1920, on October 26th, there was an accident that happened at the corner of Canal and St. Charles Streets, when a colored man fell while getting off a car and was hurt. Were you there?

A. I was. I was standing waiting for a Louisiana Avenue car and when it got within twenty feet of the corner I saw the man jump off the car, it was a colored man and that happened about in front of the Stevens Store.

I was right there at the time, a little from the stopping point and as the car stopped I jumped on the car.

Q. Did you go back to where the man had fallen?

A. No sir. I did not know that he was hurt, I saw him on the pavement.

Q. How many stops did that car make?

A. The car never came to any stop but one that I know of.

J. A. Knight, forty four years of age, was employed by the defendant, the New Orleans Railway & Light Company and has been so employed, as a motorman, since December, 1899.

Q. On October 26th, 1920, sometime in the early morning, at the corner of St. Charles and Canal, a colored man fell from a Louisiana Avenue Car when getting down?

A. Yes sir.

Q. Were you the motorman of that car?

A. Yes sir.

Q. Who was the conductor?

A. Noonan.

Q. I believe that you turn into Canal Street at Rampart?

A. Yes sir.

Q. And coming from Rampart to St. Charles Street your car uses what track?

A. The outside track, the same track as the St. Charles and Tulane Belts.

Q. As you approached St. Charles Street on that morning how were you running?

A. Getting up to the corner we stopped as usual, it is the regular stopping place.

Q. Where did you stop your car?

A. At the usual stop at St. Charles and Canal.

Q. How long did you stop there?

A. I stopped and I thought it was an unusual length of time and I said what is the matter and I looked out and I saw the conductor back a few feet, I do not know how far it was behind the car picking a man up and I jumped off and went to help him pick up the man and we put him on the car and carried him to the river.

He did not see the accident, it happened on the back end of the car and he was on the front end, got no signal to stop, didn't require any for it was the regular stopping place,

241

got no signal to go ahead and got no signal at all until they had picked up the man and put him on the car.

A review of the testimony in this case firmly impresses the facts on our mind, as testified to both by disinterested witnesses, portions of whose testimony we have put in this record, also the testimony of the motorman and conductor, that plaintiff in alighting from the moving car at the time he did on a wet morning, the car not having come to a stop, but still in motion, fell and received the serious injury, of which he complains. Had he waited until the car would have come to a stop, he could have avoided the accident, doubtless, and hence cannot recover from the defendants, damages as claimed by him, he being wholly and solely at fault.

The burden of proof rests with plaintiff to make his case certain and this has been so frequently decided that it requires no citation of authorities in support of this proposition, and whilst it is true, as stated in brief of plaintiff's counsel, "A common carrier is bound to exercise the strictest diligence in receiving a passenger, conveying him to his destination, and setting him down safely, and the burden of proof is on the carrier to show by a preponderance of evidence, what negligence, and whose, prevented the fulfillment of the contract." Referring to LeBlanc vs. Sweet, 107 La. 355; we are convinced that both propositions are well stated and the law correct, but we are also further satisfied that defendant has maintained both the fact that it exercised diligence in conveying the passenger to his destination and carried him safely to that place, but that plaintiff himself in his haste to get, ~~doubtless~~ to his work, took upon himself, the risk whilst the car was in motion, to jump from the moving car and fell, receiving the injuries that he complains of, for which under no circumstances, defendant can be held responsible. Mumphrey vs. Planters Ferterlizer Co. 6 Or. App. 131.

7.

A person cannot recover for an injury to which he has contributed by his own want of ordinary care.

110 La. p. 19 p. 23, McMich al v.. I. C. R. R. Also see 5th L. Direct pages 520-33 ard numerous cases there cited.

In this case, on motion for a new trial and refusal thereof by the learned Judge of the Court aqua, his reasons for refusal of a new trial are given in full:

"Plaintiff alleges that as he was about to alight from a car, the conductor signalled the motorman, who suddenly started the car, and he was thereby thrown to the ground violently and sustained serious injuries.

"Defendant claims that plaintiff attempted to jump from the car before it came to a stop and received his alleged injuries in that manner. That he was seriously and painfully injured and crippled is undisputed.

"Plaintiff and another colored man, who was standing some distance away, are the only witnesses testifying to the facts alleged in this petition. They are flatly contradicted by the testimony of two men who were waiting at the crossing to board the car and who testified that plaintiff jumped from the moving car at a distance of some thirty feet from the point at which the car stopped, being the usual stopping place, and in so jumping fell.

"These two witnesses were reputable business men of New Orleans, entirely without interest in the outcome of the suit and unimpeached. They corroborate the statement of the conductor and the motorman as to the facts of the occurrence, and giving their testimony the weight to which I think it is entitled, in my opinion the preponderance of evidence is with defendant.

"Had the case been tried before me without a jury I should have rejected plaintiff's demand, but in order that

8.

243

litigation may be finally terminated, the motion for a new trial will be refused.

"(Signed) C. Reid, Judge."

We concur in the reasons given by the Judge in refusing the new trial and the case now before us, being on appeal, the question at issue has been finally settled in favor of the defendants.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment be reversed and that there now be judgment in favor of the defendants, plaintiff's suit dismissed at his costs in both courts.

-Judgment reversed and suit dismissed.